UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LAKISHIA N. BOYD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:20-CV-321-TAV-DCP |
| YOUTH OPPORTUNITY INVESTMENTS, LLC, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant's Motion to Quash Subpoena Issued to The Employment and Consumer Law Group and corresponding Memorandum in Support [Docs. 27 & 28]. Plaintiff filed a Response [Doc. 37], and Defendant filed a Reply [Doc. 44]. The Motion is ripe for adjudication. Accordingly, for the reasons discussed below, the Court **GRANTS** Defendant's Motion **[Doc. 27]**.

I. **BACKGROUND**

In her Amended Complaint [Doc. 35 at 1], Plaintiff alleges that Defendant violated various state laws, including Tenn. Code Ann. § 33-2-401, *et seq.*; Tenn. Code Ann. §§ 37-1-410(b) & 37-1-613; Tennessee common law for retaliatory discharge; or, alternatively, the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304. At all times referenced in the Amended Complaint, Defendant was licensed by the Tennessee Department of Mental Health and Substance Abuse Services as a Mental Health Residential Treatment for Children & Youth facility [Doc. 35 at ¶ 6].

Defendant's agents and employees were subject to the provisions of Mandatory Child Abuse Reporting, as set forth in Tenn. Code Ann. § 37-1-401, *et seq.*, requiring mandatory reporting of sexual and/or inappropriate contact between staff and a minor resident at a facility, such as Roane Academy [*Id.* at ¶ 7].

On or about August 12, 2018, Plaintiff was hired as a "Youth Care Specialist" on an "as-needed" basis at Roane Academy [*Id.* at ¶ 8]. Plaintiff alleges that she was told during her training to report any sexual and/or inappropriate contact between staff and a minor resident to the Facility Administrator [*Id.* at ¶ 11].

Plaintiff alleges that she made verbal complaints on multiple occasions to various agents and employees of Defendant, including about the facility being under-staffed per the required ratio of children to adults under Tennessee state regulations, allegations of sexual relations between staff and children, meal breaks for staff being changed to two 15-minute breaks as opposed to one 30-minute break, failure to train staff, lack of an Assistant Facility Administrator on duty during crucial times for the facility, and a specific incident involving a child becoming upset about a staff member allegedly having an inappropriate relationship with another child [*Id.* at ¶¶ 16–20].

Plaintiff states Casey Jenkins ("Jenkins"), Lead Therapist, agreed to help Plaintiff draft a complaint email to Tyrene Green ("Green"), Defendant's Vice President of Program Development [*Id.* at ¶ 21]. In late August or early September, Plaintiff contacted the hotline for the Department of Children's Services ("DCS") to verbally report allegations of inappropriate contact between staff and children [*Id.* at ¶ 22]. Plaintiff alleges that Green became aware of the allegation in late August or early September 2019 when he was told about it by a DCS representative [*Id.* at ¶ 23]. Plaintiff asked Jamal Ashley ("Ashley"), a former co-worker, to prepare a written statement about his knowledge of certain events at Roane Academy—including allegations of staff having

intercourse with the children at the facility and that employees were overworked—so she could include it in her complaint to the company [*Id.* at ¶ 24].

Plaintiff sent her written complaint to Green on September 9, 2019, which included the allegations mentioned above, as well as Ashley's written statement [*Id.* at ¶ 25]. Plaintiff alleges that Green did not report the information in Ashley's written statement to DCS because he believed it had already been reported to DCS [*Id.* at ¶ 26]. On September 12, 2019, Plaintiff contacted Dallas Scott ("Scott"), Vice President for Tennessee, to verify that Green had passed along her complaints to Defendant's upper management, and Plaintiff filed a second Child Abuse Referral with DCS [*Id.* at ¶¶ 28 & 29].

The Amended Complaint alleges that Plaintiff called Roane Academy to see when she could work, but no one would pick up the phone—Plaintiff also noted that Roane Academy has caller identification on its phones [*Id.* at ¶ 30]. On October 30, 2019, Plaintiff contacted Human Resource Supervisor Lauren Turpin ("Turpin"), Green, and Human Resource Manager Richard McCabe ("McCabe") via email, requesting information on training needed to resume her job duties [*Id.* at ¶ 31]. In her email, Plaintiff stated that she had been retaliated against and that she believed she was being pushed to resign because her complaints were ignored and no one in management would respond to her [*Id.*]. The Amended Complaint states that Turpin was instructed that Plaintiff was not to be scheduled for work and to be told that there was no work available [*Id.* at ¶ 32].

Plaintiff states she contacted Lindsey Ford ("Ford") with Defendant's legal department on October 30, 2019, to raise various concerns, and she reiterated her belief that she was being retaliated against for her reports [*Id.* at ¶ 33]. Plaintiff sent an email on November 5, 2019, to Ford stating that she was fearful to return to work because she had reported her concerns to the company and to DCS, and she asked for reassurance of no retaliation [*Id.* at ¶ 34]. On November 6, 2019,

Plaintiff sent an email explaining her concerns to Jim Hill ("Hill"), Defendant's President, and she attached Ashley's written statement to the email [*Id.* at ¶ 35].

Plaintiff alleges that on November 11, 2019, Defendant's Chief Legal Officer, Gary Sallee ("Sallee"), emailed Plaintiff, and stated, "I recommend that you find employment elsewhere that provides working conditions more suited to your personality." [*Id.* at ¶ 36]. Plaintiff says she responded by notifying Sallee, Ford, and Hill that she felt that Sallee's recommendation meant she had no support from the company and needed to contact the Tennessee Department of Labor and file a legal action [*Id.* at ¶ 37]. Plaintiff was fired on November 12, 2019, and Plaintiff claims that Sallee said the company management had conferred and agreed to fire her because it was obvious to the company that she was preparing for a lawsuit [*Id.* at ¶ 38]. Plaintiff states Defendant offered her a severance package provided she sign a release of claims, but Plaintiff declined to do so [*Id.* at ¶ 39].

Plaintiff claims Defendant offered her an "unconditional" reinstatement seven (7) months later, June 2020, to limit her damages [*Id.* at ¶ 40]. Plaintiff accepted the offer and completed the relevant paperwork in July 2020 needed for her to start work again [*Id.* at ¶ 41]. After four months of delay, Plaintiff alleges Defendant withdrew the "unconditional" reinstatement because of alleged misrepresentations at the time of Plaintiff's initial hiring regarding criminal charges on her record [*Id.* at ¶ 42].

Relevant to the instant issue, Plaintiff served a subpoena *duces tecum* [Doc. 28-1] on counsel, Employment and Consumer Law Group, for a plaintiff who filed a similar action against Defendant in the Middle District of Tennessee, *Llana v. Youth Opportunity Investments, LLC*, No. 3:19-cv-00729 (M.D. Tenn. May 3, 2021) ("*Llana*"). In the subpoena, Plaintiff requests "[e]lectronic copies of all depositions taken of employees or managers of Youth Opportunity

4

Investments, LLC." [Doc. 28-1 at 3]. The plaintiff in *Llana* worked at the Davidson County Juvenile Detention Center ("DCJDC") in Nashville, Tennessee. *See* First Amended Complaint at ¶ 12, *Llana*, No. 3:19-cv-00729 (Doc. 24).

In *Llana*, the plaintiff alleged that she was retaliated against for reporting "violations of the Prison Rape Elimination Act of 2003 ("PREA"), 28 C.F.R. § 115, et. seq., child abuse and neglect pursuant to Tenn. Code Ann. § 37-1-401, et. seq., [and] child sex abuse pursuant to Tenn. Code Ann. § 37-1-601, et. seq . . . ." *See* First Amended Complaint at ¶ 16, *Llana*, No. 3:19-cv-00729 (Doc. 24). Plaintiff's subpoena to plaintiff's counsel in *Llana* prompted the instant motion.

## II. ANALYSIS

Federal Rule of Civil Procedure 45 governs the use of subpoenas. Specifically, Rule 45(d)(3)(A) provides that a court must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

As an initial matter, before turning to the merits, the Court must address whether Defendant has standing to object to a subpoena served on a non-party. "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-01124, 2018 WL 4328257, at *2 (M.D. Tenn. July 16, 2018) (quoting 9A Charles Alan Wright and Arthur R. Miller, et al., *Federal Practice and Procedure* § 2549 (3d ed.)); *see also White Mule Co. v. ATC Leasing Co., LLC*, No. 3:07-cv-057, 2008 WL 2680273, at *4 (N.D. Ohio June 25, 2008) ("In the absence of a claim of privilege,

5

propriety interest, or personal interest, a party has no standing to quash a subpoena directed at a non-party.") (internal citations omitted).

Here, Defendant objects to Plaintiff's subpoena requesting a copy of the depositions and exhibits thereto taken of Defendant's employees or managers in *Llana*. The primary basis for Defendant's objection is that depositions and exhibits contain confidential information pursuant to state law about youth at one of the facilities that Defendant manages. Accordingly, given Defendant's personal interest in the matter, the Court finds Defendant has standing to object. *See, e.g.*, *White Mule*, 2008 WL 2680273, at *4.

Defendant argues that the subpoena requests information that is not relevant to the issues here and that the information requested is protected under state law. The Court will address Defendant's relevancy objections and then turn to whether the subpoenaed information is protected under state law.

### A. Relevancy

Defendant asserts that how complaints are handled at a different facility have no bearing on Plaintiff's claim. Plaintiff responds that most of the corporate employees making the decision in *Llana* are the same corporate employees making decisions about Plaintiff months later. Plaintiff states that she was terminated in the fall of 2019, while the plaintiff in *Llana* left her employment with Defendant in the summer of 2018. Plaintiff argues that the managers' testimony in *Llana* about the investigative procedures used by the company into the allegations of child abuse and neglect and the alleged retaliation for reporting the same will be highly relevant in Plaintiff's case. Plaintiff submits that the same managers deposed in *Llana* are the same managers deposed in this case. Plaintiff argues that she and the plaintiff in *Llana* are similarly situated because they both alleged violations of the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304.

In its Reply [Doc. 44], Defendant argues that Plaintiff and Llana are not similarly situated, but even if they were, Plaintiff has failed to show how being similarly situated defeats the state confidentiality law prohibiting disclosure.

"Rule 26(b)(1) defines the scope of a subpoena issued pursuant to Rule 45." *Boodram v. Coomes*, No. 1:12CV-00057, 2016 WL 11333773, at *3 (W.D. Ky. Jan. 5, 2016). Specifically, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims." *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97-ART-EBA, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016). "[T]he [C]ourt retains the final discretion to determine whether a discovery request is broad or oppressive." *Id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

The Court finds the requested discovery relevant and proportional to the needs of the case under Rule 26(b)(1). The plaintiff in *Llana* made similar allegations against the same managers, and the events giving rise to the lawsuits were close in time. *See, e.g.*, *Johnson v. Peake*, No. 08-2472 D/P, 2010 WL 11493688, at *2 (W.D. Tenn. Nov. 1, 2010) (finding evidence relevant due, in part, to the fact that the events occurred close in time to the alleged discriminatory actions of the defendants); *Belcher v. Serv. Corp. Int'l*, No. 2:07-CV-285, 2010 WL 3085512, at *2 (E.D. Tenn. Aug. 4, 2010) (defendant moved to exclude evidence for being too ambiguous, abstract, and remote to be relevant, but the court denied the motion based partially on its finding that "[t]he

questions themselves, are close in time to both plaintiff's firing and the 'funeral director in charge' reassignment."). Accordingly, the Court finds the information requested in the subpoena relevant in this matter.

### B. State Law

Defendant states that the transcripts and exhibits in *Llana* that Plaintiff seeks contain privileged and confidential information concerning reports of child abuse, child sex abuse, and identifying information of youth at the DCJDC. Defendant asserts that this information is privileged under various Tennessee statutes and that disclosure could result in criminal penalties. Specifically, Defendant relies on Tennessee Code Annotated § 37-1-409, § 37-1-612, § 37-5-107, and § 33-3-103 in support of its arguments.

Plaintiff responds that Tennessee Code Annotated § 37-1-409 governs the confidentiality of those who report child abuse, but Plaintiff, as well as the plaintiff in *Llana,* have publicly identified themselves as reporters of child abuse by filing their lawsuits. Plaintiff asserts that she is not seeking any information protected by Tennessee Code Annotated § 37-1-409. In addition, Plaintiff argues that Tennessee Code Annotated § 37-1-612 protects DCS records, and she is not requesting DCS records. Plaintiff argues that during discovery, Defendant refused to disclose items describing confidential matters regarding children in its care. Plaintiff argues that, given the statutes Defendant relies on herein, she doubts the same protected information was produced in *Llana*. Plaintiff suggests that, even if Defendant did produce such documents in *Llana*, Defendant can redact any items that were disclosed in violation of the statutes. Finally, Plaintiff argues that Tennessee Code Annotated § 37-1-409(b) forbids disclosure of victims' names who received services from DCS and any reports of harm. Plaintiff states that she is not seeking any information from Defendant that would violate Tennessee Code Annotated § 37-1-409(b). Plaintiff concludes

8

that Defendant—by labeling the requested information as confidential and privileged—is seeking to deprive her of highly relevant information about Defendant's policies and practices in handling the reports of employees and engaging in retaliation.

In summary, the statutes Defendant cites forbid any disclosure of reports about children involving harm, Tenn. Code Ann. § 37-1-409, sexual abuse, Tenn. Code Ann. § 37-1-612(a), and mental health, Tenn. Code Ann. § 33-3-103. In addition, Tennessee Code Annotated § 37-5-107 provides "all records, reports and all legal documents and records made or information received that directly or indirectly identify a child . . . receiving services from the department or that identify the person who made a report of harm . . . shall be confidential and shall not be disclosed." Generally, however, courts have found disclosure of records deemed confidential under state law appropriate in federal civil rights actions. *Farley v. Farley*, 952 F. Supp. 1232, 1236 (M.D. Tenn. 1997) ("In federal civil rights actions, most courts that have taken up the issue of state privileges have concluded that state law must yield to the federal interest in full disclosure of all facts bearing upon the denial of federally-guaranteed rights.").

The distinguishing factor in the instant matter is that the Amended Complaint does not allege federal civil rights violations, but instead, relies on state law violations. Recently, the South District of Florida declined to compel DCS to produce records in a diversity jurisdiction case. *Hernandez v. Ocwen Loan Servicing, LLC*, No. 17-80525-CV, 2018 WL 2298348, at *4 (S.D. Fla. May 21, 2018). Specifically, in *Hernandez*, plaintiff alleged that defendants wrongfully foreclosed on her home, causing her to lose custody of her grandchildren. *Id.* at *1. The defendants issued a subpoena to DCS in Tennessee requesting records relating to the custody of plaintiff's grandchildren and foster care. *Id.* DCS objected, arguing that the records were confidential under Tennessee state law, including Tennessee Code Annotated § 37-1-409(b). *Id.* at *2. The court

9

noted, "Tennessee [c]ourts have adopted a deferential standard in analyzing and balancing the competing state and federal interests and have often found that disclosure was appropriate in federal civil rights actions." *Id.* at *4 (other citations omitted). The court, however, declined to compel DCS to produce the records, stating, "The Court notes that the instant case arises under diversity jurisdiction and does not implicate any violation of constitutional or civil rights." *Id.* Thus, the court concluded as follows:

> The Court finds that DCS and the State of Tennessee's interests in protecting the privacy of victims of child abuse and their families, protecting the identities of individuals who report child abuse, and protecting the integrity of the state process, are paramount to Defendants' need for the information contained in the DCS records pertaining to Plaintiff's grandchildren. Even a limited subpoena would improperly invade these important state interests. The Court has conducted a balancing test and finds that the interests of DCS and of the children it protects outweigh any interest of Defendants obtaining the documents subpoenaed from DCS. The tort claim in this case does not give rise to the compelling federal interests implicated by constitutional claims under 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990, or Title IX. DCS has satisfied its burden to demonstrate that disclosure of the records would be substantially harmful by violating the privacy of Plaintiff's grandchildren, the alleged victims of child abuse, and by revealing the identity of the individual who reported the child abuse.

*Id.*

The Court finds the above case persuasive and finds that, in this diversity jurisdiction case, records protected by the above statutes cannot be disclosed. The problem, however, is that here, it is not entirely clear whether the subpoenaed information contains such protected material. As mentioned above, the subpoena requests "electronic copies of all depositions taken of employees or managers of Youth Opportunity Investments, LLC." [Doc. 28-1 at 3]. Unlike *Hernandez*, Plaintiff has requested discovery from counsel in a similar case and not records directly from DCS.

Thus, without reviewing the requested discovery, the Court cannot discern whether the information is protected.

Plaintiff states in her Response [Doc. 37], Defendant was represented by the same counsel in both cases and that it seems doubtful that Defendant would have disclosed the protected information in *Llana*. Plaintiff suggests that Defendant can redact any items that were disclosed in violation of the law. Plaintiff argues that she is not seeking any DCS records but simply testimony about Defendant's investigative procedures and corporates practices. Defendant argues that in *Llana*, the deposition testimony is replete with information privileged under state law and that it would be nearly impossible to separate the information made confidential by state law from the rest of the deposition testimony.

In light of the above, the Court **ORDERS** the parties to meet and confer to discuss whether Defendant is able to produce any of the requested deposition testimony that is not protected by state law. In their meet and confer, Plaintiff **SHALL** be specific in what testimony she seeks (*i.e.*, Defendant's investigative procedures and corporate practices when an employee reports allegations of child abuse and neglect). Thereafter, Defendant **SHALL** produce the material that is not protected by the above statutes to Plaintiff. The Court, however, will **GRANT** Defendant's Motion to Quash Subpoena [**Doc. 27**] given Defendant's assertion that the requested depositions are replete with protected information under state law.

### III. CONCLUSION

Accordingly, for the reasons explained above, the Court **GRANTS** Defendant's Motion to Quash **[Doc. 27]**.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge